# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **CYNTHIA CLINE**, | ) |
| Plaintiff, | ) Case No. 1:06CV70079 |
| v. | ) **OPINION AND ORDER** |
| **LENORD S. HORWITZ, DPM,** | ) By: James P. Jones |
| | ) Chief United States District Judge |
| Defendant. | ) |

*Eunice P. Austin, Gentry Locke Rakes & Moore, Roanoke, Virginia, for Plaintiff*; *Carlyle R. Wimbish, III, Sands Anderson Marks & Miller, Richmond, Virginia, for Defendant.*

In this medical malpractice case arising under Virginia law, I find that there are genuine issues of material fact concerning the applicability of the continuing treatment rule and thus I cannot decide on summary judgment the bar of the statute of limitations.

I

In this case brought under the court's diversity jurisdiction, the plaintiff Cynthia Cline claims that her physician, the defendant Lenord Horwitz, a podiatrist, negligently failed to properly diagnosis and treat a condition known as Charcot joint,

causing an eventual amputation of her right foot.[1]  Dr. Horwitz has filed a Motion for Partial Summary Judgment, asserting that at least a portion of Mrs. Cline's claim for damages is barred by the applicable two-year Virginia statute of limitations.  *See* Va. Code Ann. § 8.01-243(A) (Michie 2000).  The determinative issue is whether the so-called "continuing treatment" rule governs the accrual of the plaintiff's cause of action.

The parties have briefed and argued the Motion for Partial Summary Judgment and it is ripe for decision.

II

The summary judgment record, viewed in the light most favorable to the plaintiff for the purposes of the present motion, shows the following facts.

Mrs. Cline first came to Dr. Horwitz at his office in Bluefield, Virginia, on October 15, 2001, complaining primarily of a diabetic ulcer on the bottom of her right foot.  The ulcer healed, but she thereafter complained of pain in the arch and mid-foot area of her right foot. Between October 15, 2001, and October 22, 2002, the doctor treated her for conditions in her right foot no less than twenty-two times.

---

[1] A Charcot joint is a diseased joint marked by degeneration or destruction of the bone and cartilage, causing the joint to become deformed and unstable.  *See* 2 J.E. Schmidt, *Attorney's Dictionary of Medicine* C-187 (2004).

However, after the October 22, 2002 visit, Mrs. Cline did not return to the doctor's office for treatment until December 11, 2003. On December 18, 2003, and February 4, 2004, she returned for more treatment. She has not seen him since February 4, 2004. On January 27, 2006, she filed the present suit.

According to Dr. Horwitz's office notes, at the conclusion of her October 22, 2002 visit, he and Mrs. Cline discussed "future and present health care needs" and "both felt comfortable about an appointment in the next 21-35 days." (Def.'s Br. Ex. A.) Mrs. Cline scheduled another appointment within this time frame, but was unable to return as planned due to her lack of transportation to his office.

Mrs. Cline relies on others for transportation, and during this time, she was having difficulties finding transportation to the doctor's office because her husband and other family members had to work, and a friend who used to drive her had moved away. She admits that her transportation issues did not prevent her from seeing another doctor, Dr. Sekkarie, during the period in which she was unable to visit the defendant. However, as the plaintiff points out, Dr. Sekarrie, a nephrologist, was treating her for a kidney disease and while Dr. Sekarrie does have an office in Bluefield, she was visiting him in his Welch, West Virginia, office. The significance of this distinction is that while Bluefield is an hour and twenty minutes from her home, Welch is only twenty minutes away.

As Mrs. Cline testified in her deposition, when she was unable to make the scheduled appointment with Dr. Horwitz, she called his office and spoke with one of his staff members:

> A: She [the defendant's employee] told me when I could get there to call and make an appointment.
>
> Q: Okay. And then did you do that?
>
> A: Yes.
>
> Q: So if I understand you correctly, the next time you saw Dr. Horwitz, which was over a year later, was the next time –
>
> A: Yes.
>
> Q: –you could get transportation to his office?
>
> A: Yes.

(Pl.'s Dep. 154:21-155:9.)

Furthermore, while Mrs. Cline did not return to Dr. Horwitz until December 11, 2003, she did call his office a few months prior to that visit about an ulcer on her left toe. When she called his office, she was told that he was out of town and was informed that she should go to the hospital for treatment. She went to the hospital's emergency room on September 14, 2003, and on September 16, 2003, a hospital

surgeon amputated the toe on her left foot.  During this hospital visit, Mrs. Cline informed the hospital doctors that she was a patient of Dr. Horwitz.

III

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P.  56(c).  The parties agree  that Virginia law applies.  *See Castillo v. Emergency Med. Assocs., P.A.,* 372 F.3d 643, 646 (4th Cir. 2004).  The parties also agree that the defendant physician—the party asserting the statute of limitations—has the burden of proving by a preponderance of the evidence when the cause of action accrued.  *See Columbia Heights Section 3, Inc. v. Griffith-Consumers Co.*, 135 S.E.2d 116, 119 (Va. 1964).

The continuing treatment rule has been authoritatively described as follows:

> [W]hen malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

*Justice v. Natvig*, 381 S.E.2d 8, 9 (Va. 1989) (quoting *Farley v. Goode,* 252 S.E.2d 594, 599 (Va. 1979)).

- 5 -

Case 1:06-cv-70079-JPJ   Document 49   Filed 11/05/06   Page 5 of 7   Pageid#: 379

It is contended in this case that the continuous treatment rule does not apply because Dr. Horwitz's treatment of Mrs. Cline was not continuous and substantially uninterrupted. It is argued that the nearly fourteen-month hiatus from treatment between October 22, 2002, and December 11, 2003, not based on any therapeutic reason, causes the continuous treatment rule to be inapplicable as a matter of law. I disagree.

It is clear from the Virginia cases that there is no bright-line test for an interruption of treatment sufficient to prevent application of the rule. *See, e.g., Farley*, 252 S.E.2d at 596 (rule applied where patient did not visit defendant dentist from September of 1969 to June of 1972). Moreover, it is apparent that the rule is based at least in part on the continued existence of the physician-patient relationship. *See Castillo*, 372 F.3d at 648. Dr. Horwitz certainly did not withdraw his services, and whether the relationship continued in this case depends largely upon whether Mrs. Cline's conduct effectively terminated it. *See Lyons v. Grether*, 239 S.E.2d 103, 105-06 (Va. 1977) (discussing nature of physician-patient relationship).

While the defendant here contests some of Mrs. Cline's assertions as to her relationship with Dr. Horwitz, I cannot make credibility determinations in ruling on this motion. Where, as here, the moving party on summary judgment bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well

as demonstrate the absence of a genuine dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986) (Brennan, J., dissenting). I hold that under the circumstances the statute of limitations question is for the jury.[2]

III

For the foregoing reasons, it is **ORDERED** that the Motion for Partial Summary Judgment is DENIED.

ENTER: November 5, 2006

/s/ JAMES P. JONES
Chief United States District Judge

---

[2] The defendant has requested that in the event the jury must decide the statute of limitations question, that the trial be bifurcated, and the jury first be presented with the question of whether Dr. Horwitz's treatment was continuous and substantially uninterrupted. However, I find that judicial economy would not be served by such bifurcation, and deny the request.